IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

MICHAEL BUMMER,

        Defendant.

Criminal No. 18-0142
ELECTRONICALLY FILED

**MEMORANDUM ORDER**

Before the Court is a Petition for Writ of Error *Coram Nobis* filed on behalf of Defendant. ECF 239. The Government filed a response in opposition (ECF 247) and Defendant filed a reply. ECF 249. The matter is ripe for disposition, and for the reasons that follow the Court will deny Defendant's Petition.

**I. Background**

On July 17, 2018, a Western District of Pennsylvania grand jury returned a Superseding Indictment charging Defendant with violating the Controlled Substances Act. The superseding indictment was comprised of fifty-one counts, the first twenty of which implicated Defendant. See ECF 25.

On August 29, 2018, pursuant to plea agreement with the Government, Defendant pled guilty to three counts: Count One - Conspiracy to Unlawfully Distribute a Schedule III Controlled Substance (Buprenorphine) in violation of 21 U.S.C. § 846; Count Two – Health Care Fraud, in violation of 18 U.S.C. § 1347; and Count Three - Unlawfully Distributing and Aiding and Abetting in the Unlawful Distribution of a Schedule III Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(E)(i), and 18 U.S.C. § 2. ECF 96.

During his change of plea hearing, Defendant admitted to conducting minimal intake physical examinations and patient history without any follow-up visits; allowing unlicensed counselors to provide the required counseling to go along with the drug treatment; signing blank prescriptions in advance, which Redirections Treatment Advocates' ("RTA") non-medical provider employees would later complete, and did so at times when no physician was present; allowing RTA staff to sign his name to unsigned blank prescriptions; accepting cash payments from RTA for his "medical" services, even when he did not see patients or fully complete their prescriptions.

Following his guilty plea, on October 17, 2019, this Court sentenced Defendant to three years of probation, with 180 days of home detention and 100 hours community service at each of the three counts, all to run concurrently. The Court also imposed a mandatory $300.00 special assessment, a $10,000 fine, and restitution in the total amount of $156,902.85.

On August 8, 2021, the Court granted Defendant's unopposed motion for early termination of his probation, effective on October 16, 2021. Thus, Defendant only had to serve two years of his three-year term of probation.

**II. Standard of Review**

A Writ of Error *Coram Nobis* is available to federal courts in criminal matters under the All Writs Act, 28 U.S.C.A. § 1651(a) (West 1966). [footnote omitted] *United States v. Morgan*, 346 U.S. 502 (1954). It is used to attack allegedly invalid convictions which have continuing consequences when the petitioner has served his sentence and is no longer "in custody" for purposes of 28 U.S.C.A. § 2255. The petitioner must show that he is suffering from continuing consequences of the allegedly invalid conviction. *Id.* at 512–13.

This Court must grant a Petition for Writ Of Error *Coram Nobis* if: (1) Defendant is no longer in custody; (2) Defendant suffers continuing consequences from the purportedly invalid conviction; (3) Defendant provides sound reasons for failing to seek relief earlier; (4) Defendant had no available remedy at the time of trial; and (5) Defendant asserts errors of a fundamental kind. *Ragbir v. United States,* 950 F.3d 54, 62 (3d Cir. 2020); *see also United States v. Stoneman*, 870 F.2d 102, 106 (3d Cir. 1989).

**III. Analysis**

    **A.    Defendant's Plea Agreement Prohibits this Court from Granting Defendant's Writ**

A Petition for a Writ of Error *Coram Nobis* provides a way to collaterally attack a criminal conviction for a person who is no longer "in custody" and therefore, cannot seek *habeas* relief under 28 U.S.C. § 2255 or § 2241. *See United States v. Morgan*, 346 U.S. 502, 507, 510–511, (1954). *Chaidez v. United States*, 568 U.S. 342, 345 n.1 (2013). Defendant in this case is no longer in custody and claims to be suffering from the continuing consequences stemming out of his purportedly invalid conviction.

Defendant entered into a plea agreement with the Government. ECF 94-1. On August 29, 2018, Defendant pled guilty to three counts of the twenty counts leveled against him pursuant to the terms of his plea agreement.

Importantly, in paragraph 11 of his plea agreement, Defendant indicated that he:

> . . . further waives the right to file a motion to vacate sentence under 28 U.S.C. 2255 attacking his own conviction or sentence **and the right to file any other collateral proceeding attacking his conviction or sentence.**

ECF 94-1 (emphasis added).

Because of Defendant's waiver in his binding plea agreement, Defendant may not collaterally attack his sentence through a Petition for Writ of Error *Coram Nobis* or any other

modality. Moreover, this Court conducted a thorough Rule 11 colloquy to satisfy itself that Defendant knowingly understood all of the rights he would have to relinquish by pleading guilty.[1] Accordingly, the Court denies Defendant's Petition for Writ of Error *Corum Nobis* (ECF 239), for the simple reason that he knowingly, and with the advice of his counsel, agreed to waive his rights to file such a petition, or any petition collaterally attacking his sentence.

### B. Defendant's Reliance on *Ruan v. United States* is Misplaced

However, Defendant contends that a recent case, *Ruan v. United States*, 142 S. Ct. 2370 (2022), applies retroactively thereby rendering the conduct which formed the basis of the charges to which Defendant pled guilty, as "conduct that is not criminal." According to Defendant, this Court must now intercede, ignoring his agreement to not collaterally attack his sentence, to prevent a "grave injustice." This Court disagrees with Defendant's position and with the application of *Ruan* to the facts presented in Defendant's case.

In *Ruan,* the two defendant medical doctors were convicted under 21 U.S.C. § 841 of dispensing controlled substances not "as authorized."[2] The question before the Court concerned the defendants' state of mind which the Government had to prove in order to convict the doctors of violating the statute. The Court noted that a prescription is only authorized when a doctor

---

[1] During Defendant's change of plea hearing, Defendant admitted to the following: (1) he knew and understood his trial rights, and that he was giving up those trial rights; (2) he still intended to plead guilty even knowing the rights he was relinquishing; (3) he understood the maximum sentence the Court could impose at each count as well as the guideline range, and had discussed those sentencing matters with his attorney; (4) he signed the plea agreement (ECF 94-1) after reviewing it with his attorney and he understood all of its terms and contents; and (5) he understood that because he signed the plea agreement he was giving up his right to appeal (with limited exceptions) and his right to collaterally attack his sentence. ECF 106.

[2] Title 21 U.S.C. § 841, makes it a federal crime, "[e]xcept as authorized[,] . . . for any person knowingly or intentionally . . . to manufacture, distribute, or dispense . . . a controlled substance," such as opioids. 21 U.S.C. § 841(a). *Ruan v. United States*, 213 L. Ed. 2d 706, 142 S. Ct. 2370, 2374–75 (2022).

issues it "for a legitimate medical purpose . . . acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a) (2021).

During their trials, both doctors argued their respective dispensation of drugs was lawful because the drugs were dispensed pursuant to valid prescriptions. Both defendant doctors argued for a jury instruction on *mens rea* – specifically, that the juries had to consider whether they knowingly or intentionally deviated from the standard that a prescription is only authorized when a doctor issues it "for a legitimate medical purpose ... acting in the usual course of his professional practice."

In one case, the defendant doctor asked for, but was denied, a jury instruction that he subjectively knew that his prescriptions fell outside the scope of his prescribing authority. In the other case, the defendant doctor requested and received, an instruction telling the jury that if it concluded the doctor acted in good faith – meaning that he attempted to act in accordance with what a reasonable physician would believe to be proper medical practice – then the jury had to conclude that the doctor "acted in an honest effort to prescribe for patients' medical conditions in accordance with generally recognized and accepted standards of practice." In both cases, the jury convicted the defendant doctors.

Turning to the instant matter, this case does not involve a fact-finding jury. Here, Defendant did not go to trial where a jury had to consider his *mens rea,* but instead, with the advice of his counsel, pled guilty to three of the twenty counts asserted against him in the superseding indictment. ECF 94-1. His guilty plea took place in 2018, approximately four years before the *Ruan* decision.

Defendant argues that *Ruan* retroactively applies[3] to his situation because, "under *Ruan* [his] conduct is not criminal" and further claims that Government never proved Defendant had the required *mens rea*. Ignoring the fact that the Government was not required at the time of the plea hearing in this matter to prove a *Ruan*-created level of *mens rea,* the Government, nevertheless, did state the following which describes Defendant's *mens rea* with regard to Count One of the superseding indictment:

> . . . Redirections Treatment Advocates, which we'll call RTA is an opioid treatment practice with offices in Washington, Bridgeville, PA, Morgantown and Weirton and Moundsville, West Virginia. RTA employed approximately eight physicians who were authorized under the Drug Abuse Treatment Act of 2000 to practice medically assisted treatment to opioid addicted patients through the prescription of two types of buprenorphine, subutex and suboxone.
>
> The defendant, Dr. Michael Bummer, and other doctors at RTA were DATA waived physicians and were employed as independent contractors by RTA. . . . RTA only accepted cash or credit card, did not take health insurance reimbursement. The initial visit was $175 and subsequent visits were $120.
>
> 21 CFR Section 1306.05 states: Manner of issuance of prescriptions states: All prescriptions for controlled substances shall be dated as of, and signed on the day when issued and shall bear the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use, and the name, address and registration of the practitioner.
>
> Dr. Bummer and other RTA physicians would only conduct a minimal physical examination and medical history on the first intake visit. No such follow-up visits were conducted.
>
> . . . Dr. Bummer and the other RTA physicians would sign blank pre-signed prescriptions in advance, which were provided to Ms. Hess, Mr. Handa and others who would fill in the patient's name, date, and the prescription. On occasion, a physician was not present at the RTA office when the prescriptions were written or issued.

---

[3] The Court makes no ruling on whether *Ruan* applies retroactively to this matter. The Court finds for the reasons set forth below, that whether or not *Ruan* applies retroactively, the Government did demonstrate for the Court that Defendant possessed the *mens rea*, and thus, intended to commit the crimes for which he was charged.

> On some occasions, Hess, Handa, or others would sign Dr. Bummer's and the other physicians' names to the blank prescriptions which were then provided to patients.
>
> On July 12, 2017, federal agents marked a blank pre-signed script signed by Dr. Bummer with invisible ink. The prescriptions were in the trunk of a car traveling between RTA locations and were pre-signed by several RTA physicians.  Patients received the script marked with invisible ink without seeing Dr. Bummer on August 16, 2017.
>
> At each visit, the patients [sic.] were required to complete progress notes. Dr. Bummer and the other RTA physicians would sign these forms, even though they did not see the patients or were not present. On occasion, Hess, Handa or others would sign the physician's name to make it appear as if the physician was present.
>
> The physicians were paid in cash, calculated upon the number of patient visits during which prescriptions were provided. The physicians were paid even when they did not see the patients and did not complete the prescriptions. On these occasions, Hess, Handa or others completed the blank pre-signed prescriptions.

[ECF 106].

Based on the above excerpt of the transcript from the change of plea hearing, this Court concludes that the Government thoroughly demonstrated Defendant's knowing intent to commit the crime charged against him in Count One (Conspiracy To Unlawfully Distribute A Schedule III Controlled Substance) of the superseding indictment.  Defendant admitted that he did, in fact, sign blank prescription forms in advance of, and at times without seeing patients, on the days prescriptions were issued in his name.  He also admitted that, he knew that any blank prescriptions he signed in advance could be and were completed by someone other than himself. Finally, Defendant admitted that even when he signed a blank prescription in advance, and even when someone other than himself completed that prescription, he received remuneration as if he had properly and legally treated the patient and completed that patient's prescription.

Next, with respect to counts two and three of the superseding indictment, the Government stated the following during Defendant's change of plea colloquy:

> Count Two relates to healthcare fraud.
>
> Medicare, Medicaid are federal healthcare benefit programs and both programs were defrauded when the RTA patients would obtain the blank pre-signed scripts, which were completed by the defendant and others and fill the prescriptions at pharmacies using their Medicare or Medicaid insurance.
>
> Finally, Count Three relates to substantive count of diversion or aiding and abetting diversion, on August 17, 2016[,] in which a patient received a pre-signed prescription and Dr. Bummer was not in the office and did not see the patient.

[ECF 160].

Despite the fact that Government did not have to show *mens rea* as established in 2022 by the *Ruan* decision for any of the charges to which Defendant pled guilty in 2018, the Government did in fact establish (to this Court's satisfaction) that Defendant knowingly intended to violate the law by signing blank prescription forms. In so doing, Defendant knowingly and intentionally conspired to distribute a schedule III controlled substance in violation of the Controlled Substance Act and commit health care fraud. Accordingly, Defendant's attempt to claim that he did not possess the requisite intent to form the requisite *mens rea* is utterly without merit, and for this reason as well, the Court will deny Defendant's Petition for Writ of Error *Corum Nobis*.

**IV. Conclusion**

The Court finds that Defendant knowingly and with the advice of counsel waived his right to collaterally attack his sentence through this Petition for Writ of Error *Corum Nobis*, and thus his Petition will be denied. Further, even if the *Ruan* decision were applicable to this matter, the Government ably demonstrated to this Court that Defendant possessed the necessary

*mens rea* by knowingly and intentionally signing blank prescription forms and further conspiring with others at RTA to distribute a schedule III controlled substance in violation of the Controlled Substance Act.

**ORDER**

AND NOW this 13th day of July 2023, based on the forgoing law and authority, this Court hereby **DENIES** Defendant's Petition for Writ of Error *Corum Nobis* (ECF 239), and thereby declines to vacate his conviction.

s/Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc:    All ECF Registered Counsel of Record